09-0124-cv
White v. Cantor Fitzgerald

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

          At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 22nd day of September, two thousand ten.

PRESENT:  PIERRE N. LEVAL,
          REENA RAGGI,
                              *Circuit Judges*,
          JOHN GLEESON,[*]
                              *District Judge*.
--------------------------------------------------------------------------
A.J. WHITE,

                    *Plaintiff-Appellant*,

                    v.                                          09-0124-cv

CANTOR FITZGERALD, L.P., BGC PARTNERS, L.P.,
BGC CAPITAL MARKETS, L.P., DANIEL M.
LaVECCHIA, KEVIN McNULTY,

                    *Defendants-Appellees*.
--------------------------------------------------------------------------

---

[*] District Judge John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation.

APPEARING FOR APPELLANT:                    MICHAEL H. OCHS (Jason A. Stern, *on the brief*), Anderson & Ochs, LLP, New York, New York

APPEARING FOR APPELLEES:                    WILLIAM C. BATON, Saul Ewing LLP, Newark, New Jersey

Appeal from the United States District Court for the Southern District of New York (Batts, <u>J.</u>).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is VACATED AND REMANDED.

Plaintiff A.J. White appeals from a judgment dismissing her employment discrimination claims brought pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2, *et. seq.* ("Title VII"), and related state and city laws, and compelling her to arbitrate those claims. White argues that the governing arbitration provision does not cover her claims of sex discrimination in the workplace. For the most part, as discussed more fully below, we agree. Accordingly, we vacate the judgment and remand so that White may pursue her claims of discrimination in the district court to the extent she alleges violations of the anti-discrimination laws occurring after January 1, 2005.

"The question of arbitrability is undeniably an issue for judicial determination . . . ." *N.Y. Health & Human Serv. Union v. NYU Hosps. Ctr.*, 343 F.3d 117, 119 (2d Cir. 2003). We review a final district court order compelling arbitration *de novo*. *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997).

2

"There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998). "Still, it remains the case that arbitration 'is a matter of consent, not coercion.'" *JLM Indus., Inc. v. Stolt-Nielsen SA,* 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989)). In determining whether the parties consented to arbitrate the claims of employment discrimination here at issue, we examine two arbitration provisions.

White was first employed as a broker by Appellee BGC Partners, L.P. ("BGC")[1] in May 2004, and she remained employed there until January 17, 2006, when, she claims, she was constructively discharged. At the outset, White was an at-will employee who agreed to be bound by BGC's Employee Handbook (the "Handbook"). The Handbook mandates arbitration of

> any and all claims . . . of any kind involving [the employee] and any Cantor Fitzgerald Group Company . . . including . . . those related to . . . employment discrimination . . . [under] Title VII of the Civil Rights Act of 1964 . . . and any similar federal, state, or local statute, regulation, or ordinance and any and all claims under the common law of any state or otherwise.

Handbook Arbitration Agreement and Policy at 2. The Handbook's arbitration provision further states that if an at-will employee executes an employment agreement with BGC, "the arbitration of any disputes shall be as set forth in your written employment agreement. If [the employee's] agreement makes no provision for the arbitration of disputes, then this Arbitration Agreement

---

[1] BGC is one of five defendants, all of whom are appellees here. The others are Cantor Fitzgerald, L.P., BGC Captial Markets, L.P., Daniel M. LaVecchia and Kevin McNulty. Though this order refers only to BGC, all of the defendants-appellees jointly advance the same arguments on appeal.

and Policy shall govern." *Id.* at 6.

After less than eight months on the job, White entered into an employment agreement with BGC. The agreement is dated January 1, 2004, but the parties agree it was actually executed in 2005, not 2004. Referred to here as the "Employment Agreement," it contains an arbitration clause, which provides that "any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration . . . . It is expressly agreed that arbitration as provided herein shall be the exclusive means for determination of all matters arising in connection with this Agreement . . . ." Employment Agreement at 7.

BGC argues that *both* arbitration provisions currently bind White, and that the one in the Employee Handbook requires arbitration of all claims in this case. Specifically, BGC contends that the arbitration provisions serve separate purposes: the one in the Employee Handbook "explicitly applies to Plaintiff's discrimination claims," Brief for Appellees at 13, whereas "[t]he arbitration provision in the Employment Agreement was merely intended to account for disputes that may arise out of the new written contract, which the Handbook Arbitration Agreement may not encompass," *id.* at 14 & n.6 (stating that the Employment Agreement arbitration clause, "read as an entirety, refers to the arbitration of any disputes involving the terms of the written contract"; only the "complementary" arbitration clause in the Employee Handbook includes the "laundry list" of additional disputes, including employment discrimination, that are subject to arbitration). Indeed, BGC argues that certain impermissible features of the Employment Agreement arbitration provision – including a prohibition on the award of punitive damages or attorneys' fees to White – should not concern this Court because that arbitration provision

4

governs only contract disputes, and is inapplicable to claims of discrimination in the workplace. *Id.* at 14 n.7.

We reject this argument, and hold that the only arbitration provision to which White was bound once she entered into the Employment Agreement is the one in the Employment Agreement. The Handbook arbitration provision provides that if an at-will employee is offered employment pursuant to an employment agreement, "the arbitration of any disputes shall be as set forth in your written employment agreement. If [the employee's] written agreement makes no provision for the arbitration of disputes, then this Arbitration Agreement and Policy shall govern." Handbook Arbitration Agreement and Policy at 4. The Handbook thus contemplates the continued application of its broad arbitration clause only if a later employment agreement does not contain an arbitration provision. Since White's Employment Agreement contains such a provision, the express terms of the parties' agreements require the conclusion that the Employee Handbook's arbitration provision ceased to apply once White and BGC entered into the Employment Agreement.

BGC also advances a back-up argument: even if the only applicable arbitration provision is the one in the Employment Agreement, White still must arbitrate all her claims of sex discrimination. This is an aggressive argument. As discussed above, BGC's principal argument is that it did not intend the Employment Agreement's arbitration provision to embrace employment discrimination claims because the "complementary" arbitration provision in the Handbook covers them. And it defends the no-punitive-damages and no-attorneys'-fees aspects of the Employment Agreement's arbitration provision by arguing that such limitations are

5

unobjectionable in an arbitration provision intended only "to apply to *contract* disputes," not employment discrimination claims. Brief for Appellees at 14 n.7 (emphasis in original). Nevertheless, BGC contends in the alternative that even if that argument fails, i.e., even if we hold that the Handbook arbitration provision is inapplicable, we should order arbitration anyway, pursuant to the very arbitration provision it concedes was neither intended nor worded to require it.

We disagree. We acknowledge that the argument is made possible by the strong federal policy favoring arbitration, and in particular by our own precedents that accord a presumption of arbitrability when the plaintiff has agreed to arbitrate disputes "arising under" or "in connection with" an employment agreement. *Oldroyd*, 134 F.3d at 76 (internal quotation marks omitted). But that presumption is rebuttable, and we hold that it has been rebutted here. First, BGC itself says the Employment Agreement's arbitration provision was neither intended nor drafted to include employment discrimination claims; indeed, it admits that the opposite is true. And second, White's history with her employer distinguishes this case from *Oldroyd*. When White was first hired, she was subject to an expansive arbitration provision that required her to arbitrate any dispute arising under or in connection with her *employment*, expressly including Title VII and discrimination claims. But when she later became a contract employee, the arbitration provision in the Employment Agreement abandoned this language and called for arbitration only of "disputes, differences or controversies arising under *this Agreement*," Employment Agreement at 7 (emphasis added), which says nothing about claims of employment discrimination. White therefore went from an at-will employee who was required to arbitrate any dispute, expressly

6

including an employment discrimination claim, to a contract employee who was required to arbitrate only disputes arising out of her contract. Whatever might be said about the scope of the Employment Agreement's arbitration provision if that were the only such provision White and BGC had agreed to, because White graduated from the Employee Handbook to the Employment Agreement, we can conclude "with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers" claims of sex discrimination. *Oldroyd*, 134 F.3d at 76 (internal quotation marks, brackets, and emphasis omitted) (describing when presumption of arbitrability is rebutted). Accordingly, we hold that the Employment Agreement's arbitration provision does not cover White's employment discrimination claims.

We reiterate that our holding is rooted in the particular facts of this case; we need not and do not address whether White's claims of employment discrimination would be arbitrable under the terms of the Employment Agreement if that were the only agreement she had with her employer.

Finally, we must address the possibility that White may be asserting both arbitrable and nonarbitrable claims. White's tenure at BGC began in May 2004 and extended to January 17, 2006, when she alleges she was constructively discharged. She was subject to the Handbook's arbitration provision until January 1, 2005, when she signed the Employment Agreement. White's claim that she was constructively discharged in January 2006 is plainly not arbitrable for the reasons set forth above. Similarly, her claim that she was subjected to a hostile work environment between January 1, 2005 and January 17, 2006, as well as most of the instances of disparate treatment alleged in her complaint, are not arbitrable. However, the complaint alleges a hostile work environment and acts of disparate treatment in 2004. To the extent that White seeks

7

a jury finding of liability based solely on acts that occurred in 2004, the Handbook unambiguously subjects such claims to arbitration.

White suggests that any such claims are factually intertwined with the nonarbitrable claims and for that reason should not be relegated to arbitration. BGC contends that we not only must compel the arbitration of any 2004 claims, but also must direct the district court to stay all proceedings below pending the outcome of the arbitration. We think neither side is correct. White is wrong because the Supreme Court has made clear that the Arbitration Act requires district courts to compel arbitration of arbitrable claims even where doing so produces the inefficiencies associated with litigating similar claims in separate proceedings in different forums. *See* 9 U.S.C. §§ 3, 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). BGC is wrong because the district court is not required to stay the litigation of the nonarbitrable claims before it on remand pending the outcome of any arbitrated claims. *See Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987) (stating that "we have previously allowed courts great discretion in staying nonarbitrable state and federal claims pending arbitration of related claims" and citing cases); *Castro v. Marine Midland Bank, N.A.*, 695 F. Supp. 1548, 1552 (S.D.N.Y. 1988) (declining to order stay of litigation of federal claims until completion of arbitration of related claims). Our review of the complaint reveals that White is predominantly advancing nonarbitrable claims, that is, claims based principally on events occurring in 2005 and 2006. Indeed, on remand she may choose to abandon any claims based solely on 2004 events, and to rely on such events solely to the extent they constitute evidence of the nonarbitrable claims. Even if she does not abandon her arbitrable claims, the district court may conclude that it is feasible to compel arbitration of those claims while allowing simultaneous litigation of the

nonarbitrable claims. *See Chang*, 824 F.2d at 222; *see also Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007); *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004). We leave that determination to the discretion of the district court.

Accordingly, we vacate the judgment of the district court and remand for proceedings consistent with this opinion.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, Clerk of Court