[Cite as *Settle-Muter Elec. Ltd. v. Intertech Sec.*, 2018-Ohio-4839.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Settle-Muter Electric Ltd., | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-787 |
| v. | : | (C.P.C. No. 17CV-4121) |
| Intertech Security, LLC, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on December 6, 2018

**On brief:** *Hahn Loeser + Parks LLP*, and *Christopher T. O'Shaughnessy*, for appellee.

**On brief:** *Frantz Ward LLP*, *Ian H. Frank*, and *Allison Taller Reich*, for appellants Dunlop & Johnston, Inc. and Fidelity and Deposit Company of Maryland. **Argued:** *Ian H. Frank*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendants-appellants, Dunlop & Johnston, Inc. ("Dunlop") and Fidelity and Deposit Company of Maryland ("Fidelity"), appeal a judgment of the Franklin County Court of Common Pleas that granted in part and denied in part Dunlop and Fidelity's motion to stay the proceedings pending arbitration. For the following reasons, we affirm the trial court's judgment.

{¶ 2} In December 2014, the Columbus City Schools hired Dunlop to serve as the general contractor for the construction of the Columbus Africentric Early College K12

School.[1]  On January 20, 2015, Dunlop and Intertech Security, LLC ("Intertech") entered into a contract in which Intertech agreed to perform the electrical work for the school construction project and Dunlop agreed to pay Intertech a specified sum for that work. That contract contained an arbitration provision, which in relevant part stated:

> Any and all claims, disputes, controversies, demands, and causes of action of whatever nature, kind or description arising from or relating to this Agreement, including without limitation contract, equity, tort or legal claims, and further including without limitation claims relating to rights of payment or interpretations hereof, between [Dunlop] and [Intertech] that are not resolved, as provided for in this Agreement, shall be subject to mandatory and binding arbitration, governed by RC Chapter 2711 and the Construction Industry Arbitration Rules of the American Arbitration Association.

(Ex. A, Mot. to Stay Pending Arbitration, at Article 34.)

{¶ 3}   After Intertech secured its position as the electrical subcontractor on the school construction project, it hired Wood & Sons Electric, LLC ("Wood") to perform a portion of the electrical work.  Wood's work, however, proved unsatisfactory, so Intertech asked plaintiff-appellee, Settle-Muter Electric Ltd. ("SME"), to replace Wood and perform the work originally allocated to Wood.  SME refused.  Dunlop then approached SME and promised that:   (1) it would oversee administration of the submissions of SME's applications for payment to the Columbus City Schools; (2) it would ensure that SME would be paid on time every month for all work it performed; (3) SME would not have to correct any of Wood's completed work, which included the installation of wiring, boxes, fixture mounts, and subpanels; (4) SME would not be penalized for any additional work required due to Wood's unworkmanlike work; and (5) SME would report directly to Dunlop regardless of any contract.[2]

{¶ 4}   Based on these representations, SME agreed to undertake the work and become a second-tier subcontractor on the school construction project.  On August 21,

---

[1] As this case did not progress much further than the pleading stage, we draw the facts set forth in this decision from the pleadings.

[2] Dunlop has denied making these representations.

2015, Intertech and SME entered into contract setting forth the scope of SME's work and the amount Intertech would pay SME for that work.  Intertech, however, did not comply with the contractual terms governing payment for SME's work.  SME sought recourse from Dunlop, which assured SME that it would pay SME for its work.[3]

{¶ 5}  Ultimately, according to SME, Intertech wrongfully withheld and failed to pay SME $466,933.11.  SME filed and served claims against Dunlop's payment bond and Intertech's payment bond.  Both Dunlop and Intertech refused to pay SME the money SME claimed was due and owed to it.

{¶ 6}  On May 3, 2017, SME filed suit against Intertech and Dunlop, as well as RLI Insurance Company ("RLI"), which issued Intertech a payment bond, and Fidelity, which issued Dunlop a payment bond.  Against Intertech, SME asserted claims for breach of contract, breach of the duties of good faith and fair dealing, breach of express and implied warranties, "unjust enrichment/quantum meruit," "fraud in the inducement/promissory fraud," and violation of the Prompt Payment Act, R.C. 4113.61.  (Compl. at 9, 10.)  Against Dunlop, SME asserted claims for breach of express and implied warranties, "unjust enrichment/quantum meruit," "fraud in the inducement/promissory fraud," and violation of the Prompt Payment Act, R.C. 4113.61.  *Id.*  Against RLI and Fidelity, SME sought recovery from the payment bonds.

{¶ 7}  All defendants answered the complaint.  Additionally, Intertech filed a counterclaim against SME and a cross-claim against Dunlop.  In the counterclaim, Intertech contended that SME had breached its contract with Intertech by refusing to complete all the contracted-for work, which forced Intertech to hire another contractor to do the work.  Intertech also alleged that SME engaged in fraud when it misrepresented that (1) it had completed 100 percent of the contracted-for work, and (2) Intertech had approved a proposed change order that increased the contract price by $227,390.63.  In the cross-claim, Intertech alleged that Dunlop owed it $764,109.84 for its work on the school construction project.  Based on this allegation, Intertech asserted against Dunlop claims for breach of contract and violation of the Prompt Payment Act, R.C. 4113.61.

---

[3] Intertech has denied wrongfully withholding payment from SME, and Dunlop has denied stating that it would pay SME for its work.

{¶ 8} On July 31, 2017, Dunlop and Fidelity moved pursuant to R.C. 2711.02(B) to stay all proceedings pending arbitration. In a judgment issued October 11, 2017, the trial court granted a stay of the litigation of Intertech's cross-claim against Dunlop, but denied a stay of the remainder of the proceedings.

{¶ 9} Dunlop and Fidelity (hereinafter "appellants") now appeal the October 11, 2017 judgment, and they assign the following error:

> The trial court erred as a matter of law in denying Appellants' Motion to Stay Proceedings in Part and failing to stay all claims and proceedings pending mandatory and binding arbitration between two of the parties, in accordance with Ohio Revised Code § 2711.02(B) and Ohio law.

{¶ 10} The standard under which a court of appeals reviews a judgment granting or denying a stay pending arbitration depends on the nature of the issues involved. *Hunter v. Rhino Shield*, 10th Dist. No. 15AP-172, 2015-Ohio-4603, ¶ 17; *accord Peters v. Columbus Steel Castings Co.*, 10th Dist. No. 05AP-308, 2006-Ohio-382, ¶ 10, *aff'd* 115 Ohio St.3d 134, 2007-Ohio-4787 (recognizing that courts of appeals have traditionally applied the abuse-of-discretion standard to judgments ruling on a motion to stay pending arbitration, but concluding that the de novo standard is appropriate when the appeal of a judgment granting or denying a stay presents a question of law). This appeal turns on the interpretation of R.C. 2711.02(B), which authorizes a stay of an action if an "issue involved in the action is referable to arbitration under an agreement in writing for arbitration." An issue of statutory interpretation presents a question of law, which a court of appeals reviews de novo. *Lang v. Dir., Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12; *Akron Centre Plaza, LLC v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, ¶ 10. Consequently, we will apply the de novo standard in reviewing the trial court's judgment.

{¶ 11} The only arbitration provision at issue in this case is contained in the contract between Dunlop, the general contractor, and Intertech, the electrical subcontractor. The trial court concluded that Intertech's claims against Dunlop, asserted in the cross-claim, are arbitrable under that provision. The trial court, therefore, stayed litigation of Intertech's cross-claim. Intertech has not appealed this determination, so we do not review it.

{¶ 12} In this appeal, appellants challenge the partial denial of their motion to stay, arguing that the stay issued did not go far enough. According to appellants, the trial court should have stayed the entire proceeding, including all SME's claims and Intertech's counterclaim, even though none of those claims is subject to the arbitration provision. In so arguing, appellants rely on R.C. 2711.02(B), which states:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 13} As appellants point out, several Ohio courts have held that under R.C. 2711.02(B), when an action includes an arbitrable claim, a trial court must stay the entire action, regardless of whether the action also involves non-arbitrable claims and/or parties who cannot be compelled to arbitrate. *Harrison v. Winchester Place Nursing & Rehab. Ctr.*, 10th Dist. No. 12AP-327, 2013-Ohio-3163, ¶ 20-24 (summarizing relevant precedent). Appellants contend that, because Intertech asserted arbitrable claims against Dunlop in the cross-claim, R.C. 2711.02(B) requires a stay of the entirety of the case. This argument assumes that by authorizing a stay of an "action," R.C. 2711.02(B) entitles a trial court to stay an entire case. Appellants' assumption, however, is incorrect.

{¶ 14} Pursuant to R.C. 2307.01, "[a]n action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense." Under this definition, an action arises whenever a party uses the process and procedures of the Ohio judicial system to seek a legal remedy from or against another party. Consequently, the filing and prosecution of a counterclaim constitutes an action. *Stults & Assocs. v. United Mobile Homes, Inc.*, 3d Dist. No. 9-97-66 (Oct. 14, 1998). Likewise, the filing and prosecution of a cross-claim constitutes an action. *P.K. Springfield, Inc. v. Hogan*, 86 Ohio App.3d 764, 769 (2d Dist.1993).

{¶ 15} Applying the definition of "action" set forth in R.C. 2307.01, this case consists of three actions: (1) SME's action against the four defendants, initiated by the complaint;

(2) Intertech's action against SME, initiated by the counterclaim; and (3) Intertech's action against Dunlop, initiated by the cross-claim. Undisputedly, the issues involved in the cross-claim Intertech filed against Dunlop are "referable to arbitration under an agreement in writing for arbitration." As we stated above, Intertech and Dunlop are both parties to a contract containing an arbitration provision that covers Intertech's breach-of-contract and prompt-payment claims against Dunlop. Thus, R.C. 2711.02(B) compels the stay of litigation of the cross-claim until the completion of arbitration.

{¶ 16} However, nothing in R.C. 2711.02(B) requires the stay of the other two pending actions during the arbitration of the claims contained in the cross-claim. R.C. 2711.02(B) only obligates a trial court to stay the litigation of non-arbitrable claims if those claims are encompassed in the action stayed. SME's claims and Intertech's claims against SME are not part of the action instituted by the cross-claim. Consequently, the trial court did not err in concluding that R.C. 2711.02(B) did not mandate the stay of SME's claims or Intertech's claims against SME.

{¶ 17} We recognize that no court has interpreted R.C. 2711.02(B) using the definition of "action" found in R.C. 2307.01. However, "it is well-settled 'that the General Assembly's own construction of its language, as provided by definitions, controls in the application of a statute.' " *Montgomery Cty. Bd. of Commrs. v. Public Util. Comm.*, 28 Ohio St.3d 171, 175 (1986), quoting *Ohio Civil Rights Comm. v. Parklawn Manor*, 41 Ohio St.2d 47, 50 (1975). If a legislative definition is available, a court must construe the words of the statute accordingly. *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, ¶ 4; *accord* R.C. 1.42 ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

{¶ 18} Here, in R.C. 2307.01, the General Assembly defined the word "action" for purposes of litigation in the court of common pleas. *Gregory v. Ohio Bur. of Workers' Comp.*, 115 Ohio App.3d 798, 801 (10th Dist.1996) (stating that "Title 23 involves the common pleas courts; R.C. Chapter 2307 involves civil actions in the common pleas courts; R.C. 2307.01 specifically defines an action in those courts"). That same court is invested with jurisdiction over the judicial proceedings provided for by R.C. 2711.01 to 2711.14. R.C. 2711.16. Consequently, the R.C. 2307.01 definition expresses the General Assembly's intent when it employed the word "action" in R.C. 2711.02(B).

{¶ 19} Appellants next argue that SME "brought [an action] upon [an] issue referable to arbitration under an agreement in writing for arbitration" when it asserted claims for unjust enrichment and violation of the Prompt Payment Act. Appellants contend that both of those claims raise issues that cannot be resolved without a determination of issues that are subject to arbitration under Dunlop and Intertech's arbitration agreement. Thus, appellants contend, the issues SME raises are "referable to arbitration" and their inclusion in SME's action necessitates a stay of that action. We are not persuaded.

{¶ 20} Whether SME "brought [an action] upon any issue referable to arbitration under an agreement in writing for arbitration" turns upon the four principles that guide determinations of arbitrability. *See Strickler v. First Ohio Banc & Lending, Inc.*, 9th Dist. No. 08CA009416, 2009-Ohio-1422, ¶ 9 (holding that a trial court must "assess the arbitrability of the action pending in court" to determine whether to grant a stay under R.C. 2711.02(B)). Under the first principle, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665 (1998), quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). Consequently, as a general matter, "only signatories to an arbitration agreement are bound by its terms." *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, ¶ 7. In certain circumstances, an arbitration agreement may be enforced against a nonsignatory, but only if that party is bound to the arbitration agreement under ordinary contract or agency principles, such as estoppel, incorporation by reference, assumption, piercing the corporate veil, alter ego, or third-party beneficiary. *Peters*, 2006-Ohio-382, at ¶ 13.

{¶ 21} Here, SME is not a signatory to the arbitration agreement between Dunlop and Intertech, and appellants have not argued that SME is bound to that agreement under any contract or agency principle. Consequently, none of SME's claims are subject to the arbitration agreement between Dunlop and Intertech. Because SME did not assert any arbitrable claims, its action could not include issues referable to arbitration under an agreement in writing for arbitration. *See Owens Flooring Co. v. Hummel Constr. Co.*, 140 Ohio App.3d 825, 829 (11th Dist.2000) ("The trial court concluded that the issues as they exist between [the plaintiff] and [the defendant] are not referable to arbitration under an

agreement in writing because there is no agreement in writing between these parties, and therefore, R.C. 2711.02 does not apply to the instant action. We agree."); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir.1996) (rejecting an argument like appellants' in the context of applying language in 9 U.S.C. 3 that is virtually identical to R.C. 2711.02(B)).[4] Therefore, R.C. 2711.02(B) did not require a stay of SME's action.

{¶ 22} As a final matter, we note that when R.C. 2711.02(B) does not apply, a party may still ask a court to grant a discretionary stay of the proceedings pending an arbitration. *Huber v. Lincoln Benefit Life Co.*, 2d Dist. No. 26570, 2015-Ohio-3390. Indeed, the majority of federal courts of appeals have concluded that Section 3 of the Federal Arbitration Act only requires a mandatory stay of arbitrable issues. *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir.2007); *Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1204 (11th Cir.2004). When a matter includes both arbitrable and non-arbitrable claims, district courts exercise discretion in deciding whether to stay the non-arbitrable claims. *White v. Cantor Fitzgerald, LP*, 393 Fed.Appx. 804 (2d Cir.2010); *Volkswagen* at 971-72; *Klay* at 1204; *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir.1996); *McCarthy v. Azure*, 22 F.3d 351, 361 (1st Cir.1994), fn. 15; *accord Mendez v. Puerto Rican Internatl. Cos.*, 553 F.3d 709, 712 (3d Cir.2009) ("Congress intended Section 3 * * * to leave situations involving parties who have undertaken no obligation to arbitrate for resolution in accordance with the discretion of the

---

[4] Section 3 of the Federal Arbitration Act reads:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. 3.

In *IDS Life Ins.*, the plaintiffs sued four defendants. Two of the defendants were bound by an arbitration agreement with the plaintiffs and two defendants were not bound by that agreement. The substantive issues against all defendants were identical, and so the plaintiffs argued that the issues in the suits against the defendants not bound to arbitrate were referable to arbitration by virtue of the "any issue" language. The Seventh Circuit disagreed, stating "[t]he issues in the suits against the [defendants not bound to arbitrate] may be substantively identical to the issues of the other suits, but they are not referable to arbitration 'under an agreement in writing for such arbitration,' because there is no such agreement between these parties." *Id.* at 529.

court."); *AgGrow Oils, LLC v. Natl. Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir.2001) (holding that "the district court has discretion to stay 'third party litigation [that] involves common questions of fact that are within the scope of the arbitration agreement' "); *United States ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F.Supp.2d 92, 100-01 (D.D.C.2009) (because the defendant was not a party to an arbitration agreement with the plaintiff, the plaintiff's suit against the defendant was "not an 'issue referable to arbitration under an agreement in writing for such arbitration,' and whether or not to stay such a suit pending resolution of arbitration [was] within the court's discretion"). In such cases, "issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay." *AgGrow Oils* at 783.

{¶ 23} Appellants raised in their appeal considerations relevant to whether a discretionary stay would be appropriate. However, as appellants did not seek a discretionary stay, we do not consider those arguments.

{¶ 24} In sum, we overrule appellants' sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.

————————————