[Cite as *Newton v. U.S. Bancorp Invest., Inc.*, 2023-Ohio-1450.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Albert A. Newton et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 22AP-279 |
| v. | : | (C.P.C. No. 21CV-3481) |
| U.S. Bancorp Investments, Inc. et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on May 2, 2023

**On brief:** *Baker & Hostetler, LLP, Ronald G. Linville*, and *Douglas A. Vonderhaar*, for appellants. **Argued:** *Douglas A. Vonderhaar.*

**On brief:** *Ulmer & Berne LLP, Michael N. Ungar*, and *Michael J. Charlillo*; *Ulmer & Berne LLP*, and *Sarah M. Benoit*, for appellees. **Argued:** *Michael J. Charlillo.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiffs-appellants Albert A. Newton and Tina A. Newton appeal from a judgment of the Franklin County Court of Common Pleas granting the motion to stay proceedings pending arbitration filed by defendants-appellees U.S. Bancorp Investments, Inc. ("U.S. Bancorp") and Jerod A. Tilton. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellants, a husband and wife, filed a complaint against appellees on June 3, 2021 asserting six claims—intentional misrepresentation, negligent misrepresentation, fraudulent inducement, breach of fiduciary duty, negligent non-disclosure, and negligence—and seeking redress for the reduction of value and other

charges and penalties resulting from Mr. Newton's withdrawal of cash from his Nationwide Life Insurance ("Nationwide") annuity. This appeal does not address the merits of appellants' claims but instead concerns whether the trial court appropriately applied an arbitration provision to stay the proceedings in the court of common pleas pending resolution of arbitration.

{¶ 3} According to the complaint, Mr. Newton purchased a variable annuity from Nationwide in 2013. Under the terms of the annuity, if Mr. Newton did not make any withdrawals during a 10-year "[r]oll-[u]p [p]eriod," he would receive a minimum guaranteed benefit base that included an annual credit of 7 percent per year. (Compl. at ¶ 15.) However, if Mr. Newton made any withdrawal during the roll-up period, he would lose the minimum guaranteed benefit base.

{¶ 4} In 2017, Mr. Newton was referred to Tilton, a broker-dealer and investment adviser employed by U.S. Bancorp who is registered with the Financial Industry Regulatory Authority ("FINRA"). Tilton provided Mr. Newton with "investment advisory services" and, subsequently, Mr. Newton opened a brokerage account with U.S. Bancorp. (Compl. at ¶ 17.) Tilton also began servicing Mr. Newton's existing Nationwide annuity.

{¶ 5} To open the brokerage account, Mr. Newton was required to sign U.S. Bancorp's standard Account Agreement, which expressly incorporates U.S. Bancorp's Universal Customer Agreement and Account Disclosures (hereinafter "Customer Agreement"). The Customer Agreement "covers any and all accounts that [the signatory customer] may open or reopen with [U.S. Bancorp] (including, without limitation, those accounts held jointly with others or on behalf of others)," is "subject to * * * all applicable rules and regulations of FINRA," and contains a "[p]re-[d]ispute [a]rbitration [a]greement." (Mot. to Dismiss or Stay, Ex. 2, Customer Agreement at ¶ 2, 4, and 25.) The arbitration provision states, in pertinent part:

> I agree that any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof * * * whether asserted against U.S. Bancorp Investments and/or its present or former agents or employees, will be settled by arbitration before and in accordance with the then current rules of the Financial Industry Regulatory Authority.

(Customer Agreement at ¶ 25.)

**{¶ 6}** Mr. Newton alleges that in 2018 he needed cash and sought professional advice from Tilton. According to the complaint, Tilton advised Mr. Newton in January 2018 to withdraw funds from both the U.S. Bancorp brokerage account and the Nationwide annuity. After Mr. Newton expressed concern about being assessed a penalty in relation to the annuity, Tilton allegedly assured Mr. Newton he could withdraw the funds, stating "the government got involved and now you can withdraw up to 10% if you are over age 60." (Compl. at ¶ 4.) Mr. Newton asserts he then asked Tilton to call Nationwide to confirm that a withdrawal from the annuity would not affect its value.

**{¶ 7}** On or around January 29, 2018, U.S. Bancorp sent an annuity withdrawal form to Mr. Newton, Mr. Newton signed it and returned it to U.S. Bancorp, and U.S. Bancorp sent it to Nationwide. A few weeks later, Nationwide processed the request and the funds were withdrawn from the annuity.

**{¶ 8}** According to the complaint, in April 2018 Mr. Newton called Tilton to inform him that the annuity base was not increasing as it normally had. Tilton allegedly then "told [Mr. Newton] to 'wait' for the Annuity's 2018 year-end statement" to reflect that the withdrawal did not affect the annuity value. (Compl. at ¶ 5.) By waiting, appellants assert Mr. Newton missed his chance to remedy the annuity's impaired value. Appellants contend, in summary, "[appellees'] improper investment advice and subsequent misrepresentations diminished the [a]nnuity's value [in amount to be determined but in excess of $100,000] and altered [appellants'] retirement plan." (Compl. at ¶ 43.)

**{¶ 9}** Appellees filed a motion to dismiss or stay pending arbitration asking the trial court to enforce an arbitration provision contained in the Customer Agreement, which was attached to the motion along with the Account Agreement. The trial court agreed with appellees and granted the motion to stay pending completion of FINRA arbitration. In doing so, the trial court determined: the arbitration provision in the Customer Agreement is broad; the thrust of appellants' claims is that reliance on advice from Tilton resulted in financial loss; the asserted tort claims are not a bar to mandatory arbitration since they arose from the duties owed to appellants by virtue of their relationship to Tilton; and the claims ultimately fall within the scope of the arbitration provision.

**{¶ 10}** The trial court also determined that Mrs. Newton, although a non-signatory to the U.S. Bancorp documents, nevertheless "may" be subject to the arbitration provision

since she is a direct beneficiary to the annuity who is not asserting separate, independent claims against appellees. (Apr. 11, 2022 Journal Entry Granting Mot. to Stay Proceedings Pending Arbitration ("Stay Journal Entry") at 4.) The trial court then reasoned that because Mr. Newton's claims are subject to a mandatory arbitration provision, Mrs. Newton's claims should be stayed under R.C. 2711.02. The trial court explained, "[p]robably the arbitrator will be able to decide whether Mrs. Newton's claims are subject to arbitration with her husband's claims, or for efficiency of the parties will agree to it. If her claims are not resolved in arbitration, she can move to lift the stay once arbitration is fully complete." (Stay Journal Entry at 5.)

## II. Assignments of Error

{¶ 11} Appellants appeal and assign the following four assignments of error for our review:

> [I.] The Court below erred in concluding that Appellant-Tina Newton is bound by the arbitration provision in the Account and Customer Agreements that she did not sign.
>
> [II.] The Court below erred in concluding that each of Appellants' causes of action arises from duties owed to Appellants by virtue of their relationship with Appellees.
>
> [III.] The Court below erred in concluding Appellants' claims are subject to the arbitration provision in the Account and Customer Agreements.
>
> [IV.] The Court below erred in staying this matter and compelling arbitration of Appellants' claims.

## III. Standard of Review

{¶ 12} An appeal from a motion to dismiss or stay proceedings and compel arbitration that presents a question of law is reviewed de novo. *Fifth Third Bank v. Rowlette*, 10th Dist. No. 13AP-337, 2013-Ohio-5777, ¶ 5. Whether the parties before the court are the same parties named in the arbitration agreement and whether those parties agreed to arbitrate the dispute are both questions of law subject to de novo review on appeal. *Id.*; *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 5 ("[W]hether a particular claim is arbitrable is one of law for the court to decide."). *See, e.g.*, *West v. Household Life Ins. Co.*, 10th Dist. No. 06AP-906, 2007-

Ohio-845, ¶ 12 (reviewing issues concerning the named parties and whether a dispute is arbitrable de novo).

## IV. Analysis

{¶ 13} The second, third, and fourth assignments of error, which collectively challenge the scope of the arbitration provision, would, if sustained, render the first assignment of error concerning Mrs. Newton as a non-signatory moot. We therefore begin by addressing the scope-related assignments of error prior to proceeding to the non-signatory issue.

### A. Scope of the Arbitration Provision (Second, Third, and Fourth Assignments of Error)

{¶ 14} In the second and third assignments of error, appellants contend the trial court erred in concluding appellants' causes of action "ar[ose] from duties owed to [a]ppellants by virtue of their relationship with [a]ppellees" and "are subject to the arbitration provision in the Account and Customer Agreements." (Appellants' Brief at v.) With the fourth assignment of error, appellants generally state the trial court erred in staying this matter and compelling arbitration of appellants' claims. Appellants specify the dispositive issue for all three of these assignments of error is whether "[a]ppellees' independent tortious conduct removed [a]ppellants' claims from the scope of the arbitration provision in the operative agreements." (Appellants' Brief at vi.)

{¶ 15} Preliminarily, we note appellants have not separately argued these three assignments of error as required by appellate rules. Pursuant to App.R. 12(A)(1)(b), "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs." "The court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). *Cook v. Wilson*, 165 Ohio App.3d 202, 2006-Ohio-234, ¶ 17 (10th Dist.) ("App.R. 12(A)(2) recognizes th[e] need for clarity and requires that assignments of error be argued separately. The failure to argue separately assigned errors is grounds for summary affirmance."). Because appellants argued their second, third, and fourth assignments of error collectively rather than separately, App.R. 12(A)(2) provides this court with an independent basis to overrule these assignments of error.

{¶ 16} Moreover, the same result is reached after considering, in the interest of justice, the single-issue appellants deem dispositive to all three assignments of error. As explained further below, we conclude the trial court did not err by determining appellants' allegations of appellees' tortious conduct did not remove the claims from the scope of the arbitration provision in this case.

{¶ 17} "Arbitration is a favored form of dispute settlement under Ohio law and federal law." *Rowlette* at ¶ 7. Arbitration under Ohio law is codified in R.C. Chapter 2711. In pertinent part, R.C. 2711.01(A) states:

> A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

Further, "[i]f any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement." R.C. 2711.02(B).

{¶ 18} This case also implicates the arbitration process established by FINRA for resolving customer disputes. "FINRA is a non-profit corporation that functions as a self-regulatory organization for securities firms and securities dealers." *Rowlette* at ¶ 6.[1] FINRA Rule 12200(a), which applies to customer disputes, states:

> Parties must arbitrate a dispute under the Code if:
>
> • Arbitration under the Code is either:
> (1) Required by a written agreement, or
> (2) Requested by the customer;

---

[1] More information on FINRA can be found at:
https://www.finra.org, with the Code of Arbitration Procedure for Customer Disputes available at https://www.finra.org/arbitration-mediation/rules-case-resources/12000#12200. (Accessed May 2 2023.)

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

https://www.finra.org/rules-guidance/rulebooks/finra-rules/12000 (Accessed May 2, 2023.)

{¶ 19} Consistent with R.C. 2711.01 and the FINRA code, this court has set forth a two-part test to determine whether litigants must submit to an arbitration proceeding. *West* at ¶ 12. "[T]he court must first determine: (1) whether the parties before them are the same parties named in the agreement to arbitrate; and, if so, (2) whether they agreed to arbitrate the dispute in question." *Id.* "If the court answers the first two questions in the affirmative, and finds the clause is valid, then the court must compel arbitration." *Id.*

{¶ 20} In this case, appellants do not dispute that the first part of the test—whether the parties before them are the same parties named in the agreement to arbitrate—is met as to Mr. Newton. Rather, appellants challenge the second part of test in contending appellees "independent tortious conduct removed [a]ppellants' claims from the scope of the arbitration provision in the operative agreements." (Appellants' Brief at vi.) Specifically, appellants argue the language of the arbitration provision at issue applies only to controversies "arising out of or relating to" Mr. Newton's U.S. Bancorp brokerage account, transactions with or for Mr. Newton, or the Customer Agreement. (Appellants' Brief at 13-14, 19.) According to appellants, their claims instead arise from tortious conduct—Tilton's alleged misrepresentations about contacting Nationwide—which occurred after the Customer Agreement was signed and are related to a financial product purchased from Nationwide—not an account with U.S. Bancorp. Therefore, in appellants' view, the parties did not agree to arbitrate the claims in question, and, in other words, the claims fall outside the scope of the arbitration provision.

{¶ 21} To determine whether the parties agreed to arbitrate the disputed issue, "[w]e first look at the language of the individual arbitration agreements." *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, ¶ 9. In *Aetna Health*, the

Supreme Court of Ohio held that an arbitration provision with the phrase "any claim or controversy arising out of or relating to the agreement" is considered a broad provision. (Internal quotations and citations omitted.) *Aetna Health* at ¶ 18. The court further explained, "[a]rbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision. The overarching issue is whether the parties agreed to arbitrate the issue." *Id.* at ¶ 19.

{¶ 22} The court in *Aetna Health* cited approvingly to *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003), and, consistent with *Fazio* held "a state court in Ohio may base that determination on a federal standard that inquires whether the action could be maintained without reference to the contract or relationship at issue." *Aetna Health* at ¶ 30. The *Aetna Health* court noted that, in *Fazio*, a broad arbitration provision applied to claims, including theft, brought against a stockbroker for allegedly committing fraudulent activities, including sending false statements to clients. Thus, under the *Aetna Health* standard, " '[e]ven real torts can be covered by arbitration clauses "[i]f the allegations underlying the claims 'touch matters' covered by the [agreement]." ' " *Alexander* at ¶ 24, quoting *Fazio* at 395, quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987). Generally, "[t]he agreement must be enforced unless ' " 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " ' " *Alexander* at ¶ 13, quoting *Aetna Health* at ¶ 14, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

{¶ 23} In this case, the Account Agreement check-marks "Brokerage" and then "IRA" and incorporates the Customer Agreement. (Account Agreement at 1.) The Customer Agreement states, in pertinent part:

> 2. Accounts Covered. This Agreement covers any and all accounts that I may open or reopen with U.S. Bancorp Investments (including, without limitation, those account held jointly with others or on behalf of other).
>
> * * *

4. Applicable Rules and Regulations. This Agreement and all transactions under this Agreement will be subject to * * * all applicable rules and regulations of FINRA.

* * *

25. Pre-Dispute Arbitration Agreement.

* * *

I agree that any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof * * * whether asserted against U.S. Bancorp Investments and/or its present or former agents or employees, will be settled by arbitration before and in accordance with the then current rules of the Financial Industry Regulatory Authority.

(Customer Agreement at ¶ 2, 4, 25.)

**{¶ 24}** First, as a threshold issue, we disagree with appellants that the Customer Agreement, and therefore the arbitration provision within it, is inapplicable due to the second paragraph "Accounts Covered" limitation. (Customer Agreement at ¶ 2.) The underlying facts of this case do implicate the brokerage account. Specifically, Tilton was retained to provide general investment advice and service both the brokerage account and annuity, gave advice that implicated withdrawals from both the brokerage account and the annuity, made false statements that he would, essentially, ensure his advice on the annuity was accurate, and, as a result, reduced the value of the annuity and "devastated their retirement plan" as a whole. (Compl. at ¶ 1.)

**{¶ 25}** Further, because the language of the arbitration provision in this case is undisputedly broad, it must be enforced unless it can be said with positive assurance that the arbitration provision is not suspectable of an interpretation that covers the asserted dispute. *Aetna Health* at ¶ 5. The arbitration provision agreed to by Mr. Newton and appellees covers any controversy "arising out of *or relating to*" the U.S. Bancorp account. (Emphasis added.) (Customer Agreement at ¶ 25.) Then, after covering essentially any scenario related to the U.S. Bancorp account specifically, the parties additionally agreed to arbitrate any controversy "arising out of or relating * * * to transactions with or for [Mr.

Newton]"—without qualification or reference to the U.S. Bancorp account. (Customer Agreement at ¶ 25.)

{¶ 26} Contrary to appellants' central argument, the allegations of tortious conduct here do not defeat the broad arbitration provision since the asserted tort claims cannot be maintained without reference to the investment adviser-customer relationship. *Aetna Health* at ¶ 30. While appellants now argue their claims are not premised on allegations surrounding Tilton's substantive, "improper investment advice," but rather arise only from the alleged tortious conduct (the misrepresentations), this stance is at odds with the allegations in the complaint and appellants' position to the trial court in opposing the motion to stay. (Compl. at ¶ 1, stating "[appellants] bring this action to remedy improper investment advice from [appellees] that ruined the value of their variable annuity," and ¶ 43-47; Sept. 2, 2021 Memo Contra at 1, 2, and 12, specifying "advice regarding the Annuity and subsequent promises to 'fix' the same constituted tortious conduct regardless of the amount of funds in the Brokerage Account.") Instead, the alleged facts depict a scenario where both the Nationwide annuity and the brokerage account were wrapped into the investment advice given by Tilton to Mr. Newton as a part of his role as an investment advisor. In other words, Tilton's role as a financial adviser to Mr. Newton—"the relationship"—is central to the claims. *Aetna Health* at ¶ 30; R.C. 2711.01(A). The allegations of tortious conduct underlying the claims in this case, at minimum, "touch matters" covered by the Customer Agreement. *Alexander* at ¶ 24; *Fazio* at 395.

{¶ 27} Overall, having reviewed appellants' arguments and supporting legal authority, we find the alleged tortious conduct does not bar enforcement of the broad arbitration provision on the facts of this case. Therefore, the dispositive issue identified by appellants concerning the scope of the arbitration provision lacks merit.

{¶ 28} Accordingly, for all the above stated reasons, the second, third, and fourth assignments of error are overruled.

### B. Mrs. Newton as a Non-signatory (First Assignment of Error)

{¶ 29} Appellants in their first assignment of error assert the trial court erred "in concluding that [Mrs.] Newton is bound by the arbitration provision in the Account and Customer Agreements that she did not sign." (Appellants' Brief at v.) They argue that because Mrs. Newton did not sign the Account or Customer Agreements: the presumption

favoring arbitration is inapplicable; the first inquiry of the *West* test fails since the parties are not the same parties named in the agreement; the fact she may be an intended beneficiary is irrelevant since the claims arise from appellees' independent tortious conduct and do not fall within the scope of the arbitration agreement; and, generally, she should not be bound to arbitration. For the following reasons, appellants' assignment of error lacks merit.

**{¶ 30}** As a general matter, "courts have recognized that arbitration is a matter of contract, and a party cannot be compelled to submit a dispute to arbitration unless he has agreed to do so." *Rowlette* at ¶ 7; *West* at ¶ 12 (stating the court must "first determine * * * whether the parties before them are the same parties named in the agreement to arbitrate."). " '[T]here is a counterweighing presumption *against* arbitration when a party seeks to invoke an arbitration provision against a nonsignatory.' " (Emphasis sic.) *Rowlette* at ¶ 7, quoting *Taylor, Superintendent v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, ¶ 21. However, one exception to the general rule occurs where the non-signatory is a beneficiary of the agreement. *Settle-Muter Elec. Ltd. v. Intertech Sec., L.L.C.*, 10th Dist. No. 17AP-787, 2018-Ohio-4839, ¶ 20 ("[A]n arbitration agreement may be enforced against a nonsignatory, but only if that party is bound to the arbitration agreement under ordinary contract or agency principles, such as estoppel, incorporation by reference, assumption, piercing the corporate veil, alter ego, or third-party beneficiary."). "A third party seeking to benefit from a contractual relationship need not be expressly named in the contract, but must be contemplated by the parties and be sufficiently identified." *West* at ¶ 13.

**{¶ 31}** In this case, appellants contend the trial court erred in concluding Mrs. Newton "is bound by the arbitration provision" and describe the trial court decision as "compelling arbitration of her claims." (Appellants' Brief at v, 10.) However, contrary to the premise of the assignment of error, the trial court determined that Mrs. Newton, although a non-signatory to the U.S. Bancorp documents, nevertheless "may" be subject to the arbitration provision since she is a "beneficiary directly under the annuity" who is not asserting separate, independent claims against the appellees. (Stay Journal Entry at 4.) The trial court did not hold that Mrs. Newton is bound by the arbitration provision, but

rather that her identical claims should be stayed pending arbitration of Mr. Newton's claims.  The trial court remarked:

> Given the foregoing, "[o]nce a court determines that an issue in a proceeding is subject to arbitration under a written arbitration agreement, even claims involving nonsignatories to the arbitration agreement are properly stayed under R.C. 2711.02(B)." *Scott Fetzer Co. v. Miley*, 8th Dist. No. 108090, 2019-Ohio-4578, ¶ 37 and cases cited. R.C. 2711.02(B) provides that if the issue involved in the action is referable to arbitration, upon the application of a party, the court shall stay all proceedings on the action until the arbitration process is completed.
>
> Here, Mrs. Newton has not asserted any separate claims nor alleged any harms on an independent basis. Requiring the claims asserted by Mr. Newton to undergo arbitration while Mrs. Newton pursues her identical claims here in court is not in any party's best interest; it would require duplicate efforts to prosecute the case and potentially result in inconsistent outcomes.
>
> Because the claims asserted by Mr. Newton against Mr. Tilton and U.S. Bancorp are subject to a mandatory arbitration provision, the action must be stayed on the application of the defendants pursuant to R.C. 2711.02. The court also stays all non-arbitrable claims until all issues subject to arbitration are heard and resolved. *Settle-Muter Elec. Ltd. v. Intertech Sec., LLC*, 2018-Ohio-4839, ¶ 22, 125 N.E.3d 279 (10th Dist.); *see also Harrison v. Winchester Place Nursing & Rehab. Ctr.*, 2013-Ohio-3163, 996 N.E.2d 1001 (10th Dist.).  *Probably the arbitrator will be able to decide whether Mrs. Newton's claims are subject to arbitration with her husband's claims, or for efficiency the parties will agree to it. If her claims are not resolved in arbitration, she can move to lift the stay once arbitration is fully complete.*

(Emphasis added.)  (Stay Journal Entry at 5.)

{¶ 32} Appellants have not challenged the trial court's use of R.C. 2711.02(B) to stay her claims, and the cases cited by the trial court support its action.  *See Scott Fetzer Co. v. Miley*, 8th Dist. No. 108090, 2019-Ohio-4578, ¶ 22, ¶ 37 (noting "the presence of other defendants or other nonarbitrable claims does not deprive [the agreement signatories] of their right to arbitrate any claims or disputes or issues or disputes that are subject to

arbitration" and finding "no error in the trial court's decision to stay the case pending arbitration" since "[o]nce a court determines that an issue in a proceeding is subject to arbitration under a written arbitration agreement, even claims involving nonsignatories to the arbitration agreement are properly stayed under R.C. 2711.02(B)."); *Settle-Muter Elec.* at ¶ 22, quoting *AgGrow Oils, L.L.C. v. Natl. Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 783 (8th Cir.2001) ("When a matter includes both arbitrable and non-arbitrable claims, district courts exercise discretion in deciding whether to stay the non-arbitrable claims. * * * In such cases, 'issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay.' "). We note appellants, in their memorandum opposing appellees' motion to dismiss or stay, appear to have recognized and even endorsed the trial court's ability to stay Mrs. Newton's claims, stating, "[e]ven if this Court rules that the Arbitration Provision governs Mr. Newton's claims, only Mr. Newton's claims should be sent to arbitration, and Mrs. Newton's claims should be stayed." (Sept. 2, 2021 Memo Contra at 6, fn. 4.)

{¶ 33} Lastly, appellants appear to argue that Mrs. Newton's status as a non-signatory signifies the *West* test fails globally and removes all the parties' claims from arbitration. However, *West* does not stand for the proposition that, in an action brought by multiple plaintiffs, the fact that one plaintiff did not sign an agreement to arbitrate removes all claims from arbitration. In fact, *West* recognized that enforcing an arbitration agreement against a third-party beneficiary in certain circumstances is legitimate and analyzed that issue on the facts presented there. *See id.* at ¶ 13-16. Therefore, to the extent appellants contend the presence of a non-signatory as one of the plaintiffs removes the entire action from arbitration under the test set forth in *West*, this argument lacks merit.

{¶ 34} Considering all the above, because appellants' assignment of error is premised on an incorrect view of the trial court's holding and the trial court properly stayed the proceeding under R.C. 2711.02(B) as to Mrs. Newton's identical claims, the first assignment of error is overruled.

## V. Conclusion

{¶ 35} Having overruled appellants' four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT, P.J., and LELAND, J., concur.

————————