[Cite as *Fetzer v. Miley*, 2019-Ohio-4578.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THE SCOTT FETZER COMPANY,    :

    Plaintiff-Appellant,    :

                    No. 108090

    v.    :

RAYMOND MILEY, JR., ET AL.,    :

    Defendants-Appellees.    :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AS MODIFIED
**RELEASED AND JOURNALIZED:** November 7, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-902035

---

### *Appearances:*

Jones Day, Robert P. Ducatman, Christopher M. McLaughlin and Collin R. Flake, *for appellant.*

Hahn Loeser & Parks L.L.P., Robert J. Fogarty and Robert B. Port, *for appellees.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant The Scott Fetzer Company ("Scott Fetzer") appeals from the trial court's decision granting the motion to compel arbitration and to stay proceedings pending arbitration filed by defendants-appellees Raymond Miley, Jr., Maureen Hannon, Marc Sayler, Stephen Vincent Sanders, II and American Shaman

Franchise Systems, Inc. ("American Shaman") (collectively, "appellees"). Scott Fetzer contends that the trial court erred in determining that several tort claims and a statutory claim it brought against three former employees were subject to an arbitration provision in a Loyalty, Confidentiality, and Inventions Agreement (the "LCI agreement") each of the former employees had signed while working for The Kirby Company ("Kirby"), an unincorporated division of Scott Fetzer. For the reasons that follow, we affirm the trial court's decision as modified.

**Factual Background and Procedural History**

{¶ 2} Miley, Hannon and Sayler are former employees of Kirby, a manufacturer of high-end vacuum cleaners. Kirby contracts with independent distributors, who sell its vacuum cleaners exclusively through in-home demonstrations. Miley, Hannon and Sayler "rose through the ranks" of Kirby's distribution channel and were ultimately hired by Kirby to serve as its President (Miley), Field Sales Specialist (Hannon) and Manager of Education and Development (Sayler), working at its headquarters in Cleveland, Ohio.

{¶ 3} In connection with, and as condition of their employment with Kirby, Miley, Hannon and Sayler each executed separate but identical LCI agreements. The LCI agreements governed the employees' receipt and use of Kirby's "confidential information," addressed the employees' duty of loyalty and the prohibition against conflicts of interest and placed restrictions on "unfair competition," "interfering with customer relationships" and "interfering with

employee relationships." Each of the LCI agreements contained the following "Arbitration/Injunctive Relief" provision:

> Any and all disputes or controversies concerning this Agreement shall be determined by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitrator shall be authorized to decree and award any and all relief of a legal or equitable nature including, without limitation, an order of specific performance, relief in the nature of a temporary or permanent injunction, money damages, and attorneys' fees and costs, with or without an accounting and costs. Notwithstanding the above, Company may, without prejudice to the foregoing procedures, commence a court action for a temporary restraining order or temporary or preliminary injunction. Employee agrees that upon a breach or threatened breach by Employee of any of his/her promises and obligations contained in Paragraph 2 hereof, Company's remedy at law would be inadequate and insufficient and, therefore, Company shall be entitled to preliminary or temporary injunctive relief, as well as permanent injunctive relief, without the necessity of proving actual damage. One Thousand Dollars ($1,000.00) is the agreed amount for the bond to be posted if an injunction is sought by Company to enforce the restrictions in this Agreement on Employee.

{¶ 4} Because Sayler was moving from California to Ohio for his new position, Kirby agreed to reimburse him his relocation expenses. Sayler signed a relocation reimbursement form in December 2016 in which he agreed that, if he voluntarily terminated his relationship with Kirby within three years of his start date, he would repay all reimbursed relocation expenses, in full, prior to his separation from the company.

{¶ 5} In January 2018, Kirby terminated Miley. After his termination, Miley began working as the president of American Shaman. American Shaman, which is owned by Sanders, sells industrial hemp-based products nationwide through a network of franchises. After Miley joined American Shaman, he allegedly

solicited Hannon and Sayler, his former coworkers, to leave Kirby and join him at American Shaman.

{¶ 6} In July 2018, Hannon and Sayler resigned from Kirby and went to work for American Shaman. Before Hannon resigned, she allegedly used her company email to access confidential and proprietary information regarding Kirby's sales force and provided that information to Miley and Sanders who then used that information to solicit and recruit Kirby distributors to join American Shaman. Using Kirby's confidential information, Miley and Sanders allegedly induced "at least twenty current or former Kirby distributors" to breach their distributor agreements with Kirby and sell American Shaman's products.

{¶ 7} After Sayler resigned, Kirby allegedly learned that Sayler had been wrongfully charging Kirby distributors to help them create and maintain recruiting websites, a service he was supposed to provide free-of-charge as part of his job duties. Sayler also allegedly failed to repay the relocation expenses Kirby had reimbursed him when he moved to Cleveland.

{¶ 8} On August 13, 2018, Scott Fetzer filed a complaint for damages and injunctive relief against appellees, asserting claims for breach of the LCI agreement, breach of the agreement to repay relocation expenses, tortious interference with Kirby's distributor agreements, civil conspiracy, unfair competition, breach of the common law duty of loyalty and violation of Ohio's Uniform Trade Secrets Act, R.C.

1333.61, et seq. ("UTSA").[1] Scott Fetzer requested that the trial court "preliminarily and permanently enjoin" any "further breaches or attempted breaches of the LCI [a]greement" by prohibiting Miley from "soliciting, recruiting, or otherwise encouraging any employee of Kirby to leave Kirby for any other employment, consulting, or other kind of work" for two years from the date of judgment and prohibiting Hannon and Sayler from "using, disclosing, and maintaining possession of Kirby's confidential information."  Scott Fetzer further requested that the trial court "preliminarily and permanently enjoin" any further acts or attempted acts of tortious interference with Kirby's distributor agreements, unfair competition and misappropriation of trade secrets by Miley, Hannon, Sanders and/or American Shaman.

{¶ 9} Scott Fetzer also requested that it be awarded unspecified "compensatory and related damages, all available statutory damages, punitive or exemplary damages, and treble damages" along with its attorney fees "pursuant to any applicable statutory provisions" and costs.  Scott Fetzer attached copies of the LCI agreements executed by Miley, Hannon and Sayler and the relocation reimbursement form executed by Sayler to its complaint.

---

[1] Specifically, Scott Fetzer asserted claims for breach of the LCI agreement against Miley, Hannon and Sayler, breach of the agreement to repay relocation expenses against Sayler, tortious interference with contract against Miley, Sanders and American Shaman, civil conspiracy against Miley, Hannon, Sanders and American Shaman, unfair competition against Miley, Hannon, Sanders and American Shaman, breach of the common law duty of loyalty against Hannon and Sayler and violation of the UTSA against Miley, Hannon, Sanders and American Shaman.

{¶ 10} On October 15, 2018, appellees filed a motion to compel arbitration and to stay proceedings pending arbitration pursuant to R.C. 2711.02(B) and 2711.03(A). Appellees argued that, with the exception of the claim for breach of Sayler's agreement to repay relocation expenses, all of Scott Fetzer's claims against Miley, Hannon and Sayler "concern[ed]" the LCI agreement and were "based on the same nucleus of fact regarding alleged misuse of [Kirby's] confidential information" and were, therefore, subject to arbitration under the LCI agreement's arbitration provision. Appellees requested that the court stay the proceedings on all claims against all defendants pending the conclusion of mandatory arbitration.

{¶ 11} On November 9, 2018, Scott Fetzer filed an amended complaint, omitting its breach of contract claims against Miley, Hannon and Sayler and omitting all references to the LCI agreement and unpaid relocation expenses. Scott Fetzer also modified the references to the information allegedly misused by appellees from "confidential and proprietary information" or "confidential and trade secret information" (in the original complaint) to "confidential and proprietary trade secret information" (in the amended complaint). The amended complaint was identical to the original complaint in all other respects.

{¶ 12} After amending its complaint, Scott Fetzer opposed appellees' motion to compel arbitration and stay proceedings. Scott Fetzer argued that appellees' motion was "moot" because the contracts containing the arbitration provision were "no longer at issue in this case" and its tort and statutory claims were not arbitrable.

{¶ 13} On December 12, 2018, the trial court granted appellees' motion to compel arbitration and stay proceedings. The trial court ruled that the "[p]arties are to complete arbitration in accordance with the terms of their agreement" and that the case was "stayed and removed from the active docket pursuant to R.C. 2711."

{¶ 14} Scott Fetzer appealed, raising the following two assignments of error for review:

> ASSIGNMENT OF ERROR I:
> The trial court erred in staying proceedings and compelling arbitration because Scott Fetzer's claims are not arbitrable.

> ASSIGNMENT OF ERROR II:
> The trial court erred in staying proceedings and compelling arbitration because the arbitration clause expressly permits judicial injunctive relief.

## Law and Analysis

{¶ 15} In its first assignment of error, Scott Fetzer argues that the trial court erred in compelling arbitration under R.C. 2711.03(A) and staying the proceedings under R.C. 2711.02(B) because its claims against appellees are not arbitrable. Scott Fetzer asserts that it abandoned its contract claims when it filed its amended complaint and that its remaining tort and statutory claims are not arbitrable because "they can be maintained without referring to the LCI agreement or the relationship associated with it."

{¶ 16} R.C. 2711.03(A) provides, in relevant part:

> The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the

written agreement.  * * *  The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.

{¶ 17} R.C. 2711.02(B) provides:

If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 18} Ohio recognizes a "strong public policy" in favor of arbitration and the enforcement of arbitration provisions.  *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 24; R.C. 2711.01(A).  When ruling on a motion to compel arbitration, however, the "proper focus" is on whether the parties actually agreed to arbitrate the matter at issue, i.e., the language and scope of the arbitration provision, not the general policies of the arbitration statutes. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20.

{¶ 19} A "presumption favoring arbitration" arises when a claim in dispute "falls within the scope of an arbitration provision."  *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998); *Taylor Bldg.* at ¶ 27; *Natale v. Frantz Ward, L.L.P.*, 2018-Ohio-1412, 110 N.E.3d 829, ¶ 9 (8th Dist.).  Although a party cannot be compelled to arbitrate a dispute the party has not agreed to submit to

arbitration, *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998), "[a]ny doubts regarding arbitrability should be resolved in favor of arbitration," *Natale* at ¶ 9, citing *Academy of Med. of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 14. An arbitration provision should not be denied effect ""'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"" *Council of Smaller Ents.* at 666, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 64 (1986), quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

{¶ 20} We review a trial court's decision regarding whether a party has agreed to submit an issue to arbitration de novo, i.e., we give no deference to the trial court's decision. *Natale* at ¶ 9; *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7; *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 8.

**Arbitrability of Scott Fetzer's Tort and Statutory Claims**

{¶ 21} Scott Fetzer contends that its claims are not arbitrable because four of the five claims (i.e., its tortious interference, civil conspiracy, unfair competition and UTSA claims) are asserted against Sanders and American Shaman, who did not sign the LCI agreement and never had any relationship with Kirby. It further contends that its tortious interference and civil conspiracy claims are not arbitrable because they relate to appellees' wrongful solicitation of Kirby's distributors and

"could be brought against any individual or entity that interferes with Kirby's distributor agreements, regardless of whether they [sic] signed an LCI Agreement or had a relationship with Kirby" and that its claims for unfair competition and violation of the UTSA are not arbitrable because no "contractual obligation" or "any kind of relationship between the parties" is required to "establish misappropriation." Finally, it contends that its breach of loyalty claim against Hannon and Sayler is not arbitrable because the duty of loyalty "does not exclusively arise out of a contractual relationship with Kirby," but also "arises separately out of the common law duty that all fiduciaries owe * * * regardless of whether an employment relationship exists or a contract is signed that prohibits disloyal conduct."

{¶ 22} Sanders and American Shaman are not parties to the LCI agreement. Accordingly, they are not bound by the arbitration provision and cannot be compelled to arbitrate the claims asserted against them.[2] *See, e.g., Complete Personnel Logistics, Inc. v. Patton*, 8th Dist. Cuyahoga No. 86857, 2006-Ohio-3356, ¶ 13. However, the presence of other defendants or other nonarbitrable claims does not deprive Miley, Hannon and Sayler of their right to arbitrate any claims or disputes or issues or disputes that are subject to arbitration under the LCI

---

[2] Although nonsignatories can, in certain circumstances, be bound by arbitration provisions, such as where an agency relationship exists between a signatory and a nonsignatory, appellees do not dispute that the arbitration provision at issue here does not extend to Scott Fetzer's claims against Sanders and American Shaman.

agreement. *See, e.g., Natale* at ¶ 16; *Marquez v. Koch*, 4th Dist. Ross No. 11CA3283, 2012-Ohio-5466, ¶ 1-6, 10-11, 15.

{¶ 23} The arbitration provision in this case is very broad, applying to "[a]ll disputes or controversies concerning the [LCI] Agreement." In deciding whether a dispute falls within the scope of an arbitration agreement, "'[a] proper method of analysis'" is to "'ask if an action could be maintained without reference to the contract or relationship at issue.'" *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, ¶ 24, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003). "'If it could, it is likely outside the scope of the arbitration agreement.'" *Alexander* at ¶ 24, quoting *Fazio* at 395; *see also Park Bldg. Condominium Assn. v. Howells & Howells Ents., L.L.C.*, 2017-Ohio-1561, 90 N.E.3d 131, ¶ 16 (8th Dist.); *Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.*, 2018-Ohio-1748, 111 N.E.3d 763, ¶ 15 (8th Dist.).

{¶ 24} "[A]rbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision." *Aetna Health*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 19. "'[E]ven real torts can be covered by arbitration clauses if the allegations underlying the claims touch matters covered by the agreement.'" *Natale* at ¶ 10, quoting *Alexander* at ¶ 24.

{¶ 25} In determining whether a claim can be "maintained without reference to the contract or agreement at issue," our inquiry is not limited to the form in which the claims are alleged in the complaint but extends to the underlying factual

allegations in the case. *See, e.g., Avery v. Academy Invests., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-Ohio-3509, ¶ 7 (because, as alleged in complaint, plaintiff's claims could not be maintained without reference to companies' operating agreements, the issue of whether plaintiff was a member of the companies had to be resolved according to the arbitration clauses in the operating agreements; fact that plaintiff asserted a claim for judicial dissolution pursuant to R.C. 1705.47 "does not change [the] analysis"), citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1220 (11th Cir.2011), fn. 13 ("In analyzing the scope of an arbitration clause, we consider how the factual allegations in the complaint match up with the causes of action asserted and measure that against the language of the arbitration clause."); *Natale* at ¶ 10-15 (claim for intentional infliction of emotional distress fell within the scope of arbitration clause in partnership agreement where the court "would necessarily have to refer to the partnership agreement to understand the facts underlying [plaintiff's] claim"); *Ohio Plumbing* at ¶ 2-4, 14-16 (claim for violation of Ohio Prompt Payment Act, R.C. 4113.61, could not be maintained without reference to the contract or relationship at issue and was within the scope of arbitration provision in agreement for plumbing services that extended to any "dispute under the [a]greement").

{¶ 26} Based on the language of the LCI agreement and the factual allegations of the amended complaint, we conclude that Scott Fetzer's claims for tortious interference with contract, unfair competition, violation of the UTSA and breach of loyalty against Miley, Hannon and/or Sayler constitute "disputes or

controversies concerning the [LCI] Agreement" and are subject to arbitration under the LCI agreements.

{¶ 27} Scott Fetzer's amended complaint describes a series of "disputes or controversies" arising out of the misuse of Kirby's confidential, proprietary and/or trade secret information. Scott Fetzer alleges in its amended complaint that Kirby's records relating to distributors were "non-public records" and that Kirby "limited access" to its distributor information "to only those individuals who [had] a business reason to access it." Each of Scott Fetzer's claims against Miley, Hannon and Sayler, is premised on the former employees' misuse of Kirby's confidential, proprietary and/or trade secret information. Without access to Kirby's "non-public" distributor information, Miley, Hannon, Sanders and American Shaman would not have known whom to target and could not have tortiously interfered with Kirby's distributor agreements or otherwise engaged in unfair competition or misappropriation of trade secrets as alleged in the amended complaint. Likewise, without access to Kirby's "non-public" distributor information, computers and information technology, Sayler could not have engaged in the actions that Scott Fetzer alleged constituted a breach of his duty of loyalty.

{¶ 28} The LCI agreement was the means by which Miley, Hannon and Sayler obtained access to this non-public, confidential, proprietary and/or trade secret information. Indeed, it was only because Miley, Hannon and Sayler signed the LCI agreement and agreed to be bound by its terms that Kirby granted them

access to its non-public, confidential, proprietary and/or trade secret information.

As stated in Paragraph 1 of the LCI agreement:

> **Benefits and Responsibilities of Employment.**
>
> a.    **Items Provided to Employee.**   Company will provide Employee with one or more of the following: (a) portions of the Company's Confidential Information and updates thereto; (b) authorization to communicate with customers and prospective customers and reimbursement of customer development expenses in accordance with Company policy limits, to help Employee develop goodwill for Company; and/or (c) authorization to participate in specialized training related to Company business. *Company agrees to provide Employee with these items in reliance upon Employee's promise to abide by the restrictions in this Agreement.   Without Employee's agreement to the restrictions and protections contained herein, Employee would not otherwise have access to the aforementioned items.*  The foregoing promise by the Company is a fully enforceable ancillary agreement at the time it is made, but it is contingent upon Employee's full compliance with the various protective covenants provided for in this Agreement.

(Emphasis added.)

{¶ 29} "Confidential Information" is defined in Paragraph 2(a) of the LCI

agreement, in relevant part, as follows:

> "Confidential Information" refers to an item of information, or a compilation of information, in any form (tangible or intangible), related to the Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use.  * * * Confidential Information includes, but is not limited to, the following:
>
> i.    Company's relationship with its customers, including its contractual relationships with such customers and the terms thereof;
> ii.   Information concerning Company's products and services that it offers for sale or sells to its customers;

iii. Information about Company's pricing strategies and programs, including, without limitation, its discounting policies and programs, special pricing strategies and volume discounts;

iv. Company's costs, marketing strategies, short-term and long-range sales, and sales programs and forecasts;

v. Information concerning Company's customer base, including statistical information, identities, names and customer profiles;

vi. Information concerning Company's past, present, or future financial condition or performance;

vii. Information relating to Company's competitors;

viii. Information concerning Company's vendors and suppliers, including information concerning prices and terms extended to Company by its vendors and suppliers;

ix. Information concerning Company's computer system, software, computer software codes, and algorithms;

x. Information concerning Company's technology, know-how, processes, improvements, discoveries, designs, formulae, inventions and techniques;

xi. Information concerning Company's manufacturing techniques and equipment;

xii. Information concerning Company's research and development results and plans;

xiii. Information concerning Company's personnel policies and procedures and human resources information obtained from confidential personnel file (such as internal evaluations of the performance, capability and potential of any employee of the Company Affiliates);

xiv. Company's business methods; and

xv. Information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to the Company in confidence.

Confidential Information will include trade secrets, but an item of Confidential Information need not qualify as trade secret to be protected by this Agreement. Company's confidential exchange of information with a third party for business purposes will not remove it from protection under this Agreement. Information is Confidential Information regardless of the form in which it appears. For example, Confidential Information could be a document, electronically-stored data, or the substance of an oral conversation with others. Employee acknowledges that items of Confidential Information are Company's valuable assets and have economic value, actual or potential, because

they are not generally known by the public or others who could use them, and thus, should be treated as Company's trade secrets. * * *

{¶ 30} The cases cited by Scott Fetzer in support of its argument that its tort and statutory claims are not subject to arbitration because they "can be maintained independently, without referencing the contract that contains the arbitration clause," are readily distinguishable.

{¶ 31} In *Shumaker v. Saks, Inc.*, 8th Dist. Cuyahoga No. 86098, 2005-Ohio-4391, the plaintiff, as administrator of the decedent's estate, filed suit against the defendants, alleging that they had violated the Ohio Consumer Sales Practices Act by continuing to sell the decedent goods through Saks' personal shopper service that the decedent did not need and could not afford. *Id.* at ¶ 1-3. Defendants filed a motion to stay proceedings and compel arbitration, arguing that the claim was subject to arbitration pursuant to an arbitration clause in the decedent's credit card agreement with Saks. *Id.* at ¶ 4. This court held that the arbitration provision, which was specifically limited to disputes regarding the credit card agreement, the credit card holder's account and any balances on that account, did not apply to the claim at issue and affirmed the trial court's denial of the motion to stay proceedings and compel arbitration. *Id.* at ¶ 14-16, 21.

{¶ 32} In *GB AZ I, L.L.C. v. Arizona Motors, L.L.C.*, 8th Dist. Cuyahoga No. 95502, 2011-Ohio-1808, the issue was whether the various of causes of action asserted by the plaintiff against the defendants arose out of a joint venture agreement executed by all parties, which did not contain an arbitration provision,

or a separate lease agreement, executed by the plaintiff and one of the defendants, which contained an arbitration provision. *Id.* at ¶ 2-4, 8. After reviewing the allegations of the amended complaint, this court concluded that the allegations pertained solely to the joint venture agreement and not the lease agreement and that the trial court, therefore, did not err in denying appellants' motion to compel arbitration and stay proceedings. *Id.* at ¶ 10-11, 13.

{¶ 33} In *Complete Personnel Logistics*, 2006-Ohio-3356, this court affirmed the trial court's denial of a motion to stay proceedings pending arbitration of the plaintiffs' claims for civil conspiracy, fraud, coercion and unjust enrichment against the defendants. *Id.* at ¶ 1-2. In that case, the plaintiffs alleged that the defendants had fraudulently induced them to purchase nonexistent stop-loss insurance and then collected premiums for the nonexistent insurance coverage. *Id.* at ¶ 2, 15. This court held that an arbitration clause in a claims administrative service agreement that governed the relationship between one of the plaintiffs and one of the defendants, who served as the third-party administrator for the plaintiff's self-funded welfare benefit plan, did not mandate arbitration of the plaintiffs' claims because (1) some of the parties were not a party to the agreement and, therefore, could not be bound by it and (2) the claims at issue were "unrelated" to the claims administrative services agreement because the insurance was not provided pursuant to that agreement and the premiums were not collected pursuant to that agreement. *Id.* at ¶ 13-15. This is not the case here.

{¶ 34} In *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69 (8th Dist.), this court held that the plaintiff's tort claims against her employer and supervisor after she was allegedly raped by her supervisor while at work were not subject to a mandatory arbitration agreement she had signed as a term of her employment because (1) the claims relating to and arising from her sexual assault were "independent of the employment relationship" in that "[a]ny individual could assert the same causes of action based on the underlying facts" and (2) "ongoing verbal and physical contact culminating in sexual assault as well as retaliation, harassment, or other detrimental acts * * * is not a foreseeable result of the employment." *Id.* at ¶ 3-5, 65, 67. The court also found that the arbitration provision was procedurally and substantively unconscionable as applied to the facts of the case. *Id.* at ¶ 83, 104-105. Here, there is no claim that the arbitration provision is unconscionable and the protection of Kirby's confidential information was the primary purpose of the LCI agreement, not an "unforeseeable result" of the parties' relationship.

{¶ 35} As alleged in its amended complaint, Scott Fetzer's claims against Miley, Hannon and Sayler clearly '"touch matters"' covered by the LCI agreement. *Natale*, 2018-Ohio-1412, 110 N.E.3d 829, at ¶ 10, quoting *Alexander*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, at ¶ 24.

{¶ 36} They are directly related to Miley, Hannon and Sayler's prior employment relationship with Scott Fetzer and the confidential, proprietary and trade secret information to which they obtained access by virtue of that relationship and their execution of the LCI agreement, which contains the arbitration provision.

Accordingly, the trial court did not err in determining that Scott Fetzer's claims against Miley, Hannon and Sayler were subject to arbitration under the LCI agreement and in ordering the parties "to complete arbitration in accordance with the terms of their agreement."

{¶ 37} We likewise find no error in the trial court's decision to stay the case pending arbitration. Once a court determines that an issue in a proceeding is subject to arbitration under a written arbitration agreement, even claims involving nonsignatories to the arbitration agreement are properly stayed under R.C. 2711.02(B). *See, e.g., Maclin v. Greens Nursing & Assisted Living, L.L.C.*, 8th Dist. Cuyahoga No. 101085, 2014-Ohio-2538, ¶ 9 ("[W]hen a trial court determines that certain claims are subject to arbitration, it must stay the entire proceeding until those claims have been arbitrated, even though the action may involve both arbitrable and non-arbitrable claims."); *Jarvis v. Lehr*, 1st Dist. Hamilton No. C-130832, 2014-Ohio-3567, ¶ 11 ("Once a court determines an issue in the proceeding is covered by a written arbitration agreement, even claims involving nonsignatories to the arbitration agreement will be stayed under R.C. 2711.02(B)."); *Fayette Drywall, Inc. v. Oettinger*, 2d Dist. Montgomery No. 28059, 2019-Ohio-48, ¶ 14 ("[T]he 'presence of non-arbitrable claims and parties who cannot be compelled to arbitrate is not a valid basis to deny a stay pending arbitration."'), quoting *Estate of Younce v. Heartland of Centerville*, 2016-Ohio-2965, 65 N.E.3d 192, ¶ 46 (2d Dist.); *Marquez*, 2012-Ohio-5466, at ¶ 11 ("[T]he presence of non-arbitrable claims and parties not subject to an arbitration agreement does not justify the denial of

appellants' motion to stay."); *Katz v. Katz*, 6th Dist. Lucas No. L-17-1157, 2018-Ohio-3210, ¶ 38 ("'Where an action involves both arbitrable and non-arbitrable claims, the entire proceeding must be stayed until the issues subject to arbitration are resolved.'"), quoting *Garber v. Buckeye Chrysler-Jeep-Dodge of Shelby, L.L.C.*, 5th Dist. Richland No. 2007-CA-0121, 2008-Ohio-3533, ¶ 18.

{¶ 38} We overrule Scott Fetzer's first assignment of error.

**Exception for Temporary or Preliminary Injunctive Relief**

{¶ 39} In its second assignment of error, Scott Fetzer contends that the trial court erred in staying the proceedings and compelling arbitration because the "arbitration/injunctive relief" provision in the LCI agreement "expressly permits judicial injunctive relief," granting Scott Fetzer the right to "commence a court action for a temporary restraining order or temporary or preliminary injunction," and its amended complaint includes a request for preliminary injunctive relief.

{¶ 40} There is nothing in the record to indicate that Scott Fetzer ever raised this issue or argument below.[3] Scott Fetzer never sought a temporary restraining order. Although both its original and amended complaints included a prayer for preliminary and permanent injunctive relief, Scott Fetzer did not even mention the "injunctive relief" portion of the provision in its opposition to appellees' motion to

---

[3] In its reply brief, Scott Fetzer contends that it did raise this issue below, i.e., that "the arbitration clause permits judicial injunctive relief and Scott Fetzer had sought that remedy," during a conference held in chambers on November 29, 2018, before the trial court ruled on appellees' motion. There is no transcript of the conference or any other indication that this occurred in the record. As appellant, Scott Fetzer has the burden of demonstrating error by reference to matters in the record. We cannot consider matters that are not part of the record on appeal.

compel arbitration and to stay proceedings or in any of the other documents it subsequently filed with the court. Further, although the case was pending for nearly four months before the trial court granted appellees' motion to compel arbitration and stay proceedings, it does not appear from the record that Scott Fetzer ever pursued its request for preliminary injunctive relief.

{¶ 41} A party cannot raise new issues or arguments for the first time on appeal; failure to raise an issue before the trial court results in a waiver of that issue for appellate purposes. *See, e.g., Lycan v. Cleveland*, 8th Dist. Cuyahoga Nos. 107700 and 107737, 2019-Ohio-3510, ¶ 32-33 ("It is well-established that arguments raised for the first time on appeal are generally barred and a reviewing court will not consider issues that the appellant failed to raise in the trial court."), citing *Cawley JV, L.L.C. v. Wall St. Recycling L.L.C.*, 2015-Ohio-1846, 35 N.E.3d 30, ¶ 17 (8th Dist.); *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017 Ohio-384, 83 N.E.3d 383, ¶ 21 (8th Dist.) ("It is well established that a party cannot raise new arguments and legal issues for the first time on appeal, and that failure to raise an issue before the trial court results in waiver of that issue for appellate purposes.").

{¶ 42} Accordingly, Scott Fetzer has waived the issue and we need not address the merits of Scott Fetzer's second assignment of error.

{¶ 43} Scott Fetzer's second assignment of error is overruled.

{¶ 44} We affirm the trial court's decision to order arbitration and to stay the proceedings pending arbitration. However, to avoid any potential confusion, since only Scott Fetzer's claims against Miley, Hannon and Sayler are subject to

arbitration and Scott Fetzer's claims against Sanders and American Shaman are not subject to arbitration, we modify the trial court's judgment slightly to state that only "Scott Fetzer, Miley, Hannon and Sayler are to complete arbitration in accordance with the terms of their agreement."

{¶ 45} Judgment affirmed as modified.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR